IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SECURITIES AND EXCHANGE COMMISSION, | : |
|---|---|
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 2012-CV-1296 |
| TIMOTHY J. MCGEE, *et al* | : |
| Defendants. | : |

# DEFENDANT TIMOTHY J. MCGEE'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF THE SECURITIES AND EXCHANGE COMMISSION FOR SUMMARY JUDGMENT

Dated: March 20, 2015

John C. Grugan (Attorney No. 83148)
Paul J. Koob (Attorney No. 309029)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

Attorneys for Defendant Timothy J. McGee

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. STANDARD FOR SUMMARY JUDGMENT ..................................................... 1

III. ARGUMENT ............................................................................................................. 2

    A.    The SEC's Theory of Liability Rests on the Unlawfully Enacted Rule 10b5-2. ................................................................................................................ 2

    B.    Mr. McGee is Only Responsible for His Personal Insider Trading. ...................... 5

        1.    If Disgorgement is Ordered, Mr. McGee Should Only Be Ordered to Disgorge His Personal Gains from Insider Trading ............................... 5

        2.    Mr. McGee is Not Jointly and Severally Liable for Any Downstream Tipping. .................................................................................. 8

    C.    No Penalty for Insider Trading Should be Imposed on Mr. McGee..................... 10

    D.    No Permanent Injunction Should be Imposed on Mr. McGee............................. 12

IV. CONCLUSION........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

In re Allou Distributors,
    No. 8–03–82321, 2012 WIL 6012149 at *15 (E.D.N.Y. Dec. 3, 2012) ...................2

Chiarella v. U.S., 445 U.S. 222 (1980) ...............................................................................2, 3, 4

Dirks v. SEC, 463 U.S. 646 (1983)..............................................................................................4

Hateley v. SEC,
    8 F.3d 653 (9th Cir. 1993) ..............................................................................................6, 10

Howard v. Allen-Bullock,
    No. 10-3184, 2011 WL 1103863 (E.D. Pa. May 23, 2011).......................................................1

Mandel v. M & Q Packaging Corp.,
    706 F.3d 157 (3d Cir. 2013)....................................................................................................1

Merkle v. Upper Dublin Sch. Dist.,
    211 F.3d 782 (3d Cir. 2000)....................................................................................................2

Nat'l State Bank v. Fed. Reserve Bank,
    979 F.2d 1579 (3d Cir. 1992)..................................................................................................1

Peterson v. Lehigh Valley Dist. Council,
    676 F.2d 81 (3d Cir. 1982)......................................................................................................2

Reedy v. Evanson,
    615 F.3d 197 (3d Cir. 2010)....................................................................................................2

SEC v. Bonastia,
    614 F.2d 908 (3d Cir.1980)...................................................................................................12

SEC v. Calvo,
    378 F.3d 1211 (11th Cir. 2004) ..............................................................................................9

SEC v. Contorinis,
    No. 09 CIV. 1043 RJS, 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012) aff'd, 743 F.3d 296
    (2d Cir. 2014)........................................................................................................................12

SEC v. Downe,
    969 F. Supp. 149 (S.D.N.Y. 1997) aff'd sub nom. SEC v. Warde, 151 F.3d 42
    (2d Cir. 1998)...............................................................................................................5, 6, 7, 8

SEC. v. Falbo,
    14 F. Supp. 2d 508 (S.D.N.Y. 1998)....................................................................................6, 7

SEC v. First Jersey Securities, 101 F.3d 1450, 1475 (2d Cir. 1996) ............................................10

SEC v. Gowrish,
 No. C 09-05883 SI, 2011 WL 2790482 (N.D. Cal. July 14, 2011) aff'd, 510 F. Appx.
 588 (9th Cir. 2013)................................................................................................................6, 8

SEC v. Gupta,
 No. 11 CIV. 7566 JSR, 2013 WL 3784138 (S.D.N.Y. July 17, 2013) aff'd, 569 F.
 Appx (2d Cir. 2014) cert. denied, 135 S. Ct. 976 (2015).....................................................11, 12

SEC v. Hughes Capital Corp.,
 124 F.3d 449 (3d Cir. 1997)...........................................................................................5, 8, 9, 10

SEC v. Sekhri,
 No. 98 Civ. 2320(RPP), 2002 WL 31100823 (S.D.N.Y. Jul. 22, 2002)...................................11

SEC v. Teo,
 746 F.3d 90 (3d Cir. 2014) cert. denied, 135 S.Ct. 675 (2014) .................................................8

SEC v. Washington County Utility Dist.,
 676 F.2d 218 (6th Cir.1982) ......................................................................................................6

SEC v. Whittemore,
 659 F.3d 1 (D.C. Cir. 2011) .....................................................................................................10

U.S. v. Halper,
 490 U.S. 435 (1989)...................................................................................................................5

U.S. v. O'Hagan, 521 U.S. 642 (1997)................................................................................2, 3, 4

**STATUTES, RULES AND, REGULATIONS**

Fed. R. Civ. P. 56(a) ........................................................................................................................1

15 U.S.C. § 78j...........................................................................................................................2, 3, 5

17 C.F.R. 240.10b5-2........................................................................................................................2

## I. INTRODUCTION

That Mr. McGee was convicted of insider trading and perjury is not in dispute. Nor should it be in dispute that Mr. McGee has paid an extraordinarily high price as a result of that conviction, as measured by his family, reputational, financial, and employment loss. In light of his conviction, Mr. McGee concedes that he is collaterally estopped from contesting certain facts put forth in the SEC's Statement of Undisputed Facts.

The SEC, however, overreaches in its request that Mr. McGee disgorge any amount above the proceeds of his personal trading. Moreover, Mr. McGee is not jointly and severally liable for any downstream trading by Defendant Michael Zirinsky or Zirinsky's friends and relatives, the Relief Defendants. Finally, no civil penalty or permanent injunction should be entered against Mr. McGee.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment may not be entered in a plaintiff's favor unless the plaintiff shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing no genuine issues of material fact exist," Howard v. Allen-Bullock, No. 10-3184, 2011 WL 1103863, at *1 (E.D. Pa. May 23, 2011), and the court is required to view "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 164 (3d Cir. 2013). Moreover, the law is well settled that where "the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard [for summary judgment] is more stringent." Nat'l State Bank v. Fed. Reserve Bank, 979 F.2d 1579, 1580 (3d Cir. 1992). The court must view all of the facts in the light most favorable to the non-moving party, who is entitled to "every reasonable inference that can be drawn from the record," and if "there is a disagreement about the facts or

the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) and Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982)). A party may not rest on an adverse interference to meet its burden on summary judgment: the "adverse inference drawn from a party invoking the Fifth Amendment cannot be the sole basis for a finding of liability, and at the summary judgment stage, a court is obligated to draw all inferences in favor of the non-moving party." In re Allou Distributors, No. 8–03–82321, 2012 WIL 6012149 at *15 (E.D.N.Y. Dec. 3, 2012).

### III. ARGUMENT

#### A. The SEC's Theory of Liability Rests on the Unlawfully Enacted Rule 10b5-2.

While recognizing the impact of the Third Circuit's affirmance of his conviction, and to ensure preservation of this issue in this matter and any subsequent appeal, Mr. McGee again contends that the SEC has failed to establish liability because the SEC's theory of liability rests on SEC Rule 10b5-2, 17 C.F.R. 240.10b5-2, which was promulgated invalidly.

Mr. McGee's securities fraud conviction is premised entirely upon Rule 10b5-2, which purports to define relationships encompassed by the misappropriation theory of insider trading. Rule 10b5-2, however, was promulgated far in excess of the SEC's authority. Indeed, Rule 10b5-2 was passed in direct response to, and in an unmistakable attempt to expand the contours of, the Supreme Court's decisions in Chiarella v. U.S., 445 U.S. 222 (1980), and U.S. v. O'Hagan, 521 U.S. 642 (1997).

The Supreme Court's holdings in Chiarella and O'Hagan were precise and limited. In Chiarella, the Supreme Court summarized prior Section 10(b) decisions as holding:

> [A] purchaser of stock who has no duty to a prospective seller because he is neither an insider nor a fiduciary has been held to have no obligation to reveal

2

> material facts. . . .[L]iability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction.

445 U.S. at 229-230. The Court in O'Hagan built off of this rule. Recognizing that the classical theory of insider trading is premised on the "relationship of trust and confidence" between corporate insiders and shareholders, the Supreme Court held that the misappropriation theory was necessary as a "complement[ ]" to the classical theory to address instances when there is a breach of the relationship of trust and confidence between corporate insiders and corporate outsiders. O'Hagan, 521 U.S. at 652. Just as, under the classical theory, the "relationship of trust and confidence" between corporate insiders and shareholders is based on the fiduciary duties of corporate insiders to shareholders, the relationship of trust and confidence between corporate insiders and corporate outsiders is based on a "recognized duty" like that, as in O'Hagan, between an attorney and his client. Id. at 652, 666. Thus, O'Hagan produced a limited expansion of insider trading liability, bound within relationships between corporate insiders and corporate outsiders that are based upon a "recognized duty" of "trust and confidence," but reaching no further. Indeed, in its briefs to the Supreme Court, the government (represented both by the U.S. Department of Justice and the SEC) explicitly and repeatedly described the "relationship of trust and confidence" under both theories as resting on "fiduciary or fiduciary-like" relationships. Reply Br. of United States, O'Hagan, 1997 WL 174119 at *13-14 (Apr. 9, 1997) (claiming that qualifying relationships under the misappropriation theory "are often comparable" to temporary insiders under the classical theory such as attorneys, consultants, accountants, and the like); see also Br. of United States, O'Hagan, 1997 WL 86306, at *14 (Feb. 27, 1997) ("Under the misappropriation theory of insider trading, a person commits fraud on the source of information for securities trading when he uses confidential information for his trading in a breach of a fiduciary or similar duty owed to the source.").

3

Nevertheless, two years after the Supreme Court decided O'Hagan, the SEC promulgated Rule 10b5-2. Rule 10b5-2 was a purposeful expansion of O'Hagan and does away with the "fiduciary or fiduciary-like relationship" that is the basis for insider trading liability under Chiarella and O'Hagan. The SEC's drafting of a Rule imposing liability on the basis of "a relationship of trust or confidence," as opposed to a "relationship of trust and confidence" arising out of a "recognized duty," illustrates the SEC's larger purpose: to eviscerate the fiduciary duty requirement and thus achieve through rulemaking what it had not been able to achieve through decisional law. This expansion had been an ambition of the SEC for nearly two decades. In Chiarella, 445 U.S. at 234, and Dirks v. SEC, 463 U.S. 646 (1983), the Supreme Court rejected the SEC's view that all trading on material, nonpublic information violates Section 10(b). Rule 10b5-2, however, purports to make illegal what the Supreme Court already decided was legal because, as a practical matter, virtually everyone who receives inside information will have some kind of relationship with the insider who provided it, and therefore will fall within the purview of Rule 10b5-2. Stated differently, and in direct repudiation of the "fiduciary or fiduciary-like" standard, the SEC Rule imposes liability on those whose only "recognized duty" is that which the Rule itself imposes. This case, where the insider and outsider did not have a professional relationship, and where the sum of their relationship arose out of a purposefully unstructured fellowship that has no legal confines or rules whatsoever, including relating to the confidentiality of information received from other participants, demonstrates just how far Rule 10b5-2 moved the misappropriation theory from O'Hagan.

This gross overreaching by the SEC is impermissible—the SEC cannot promulgate a rule prohibiting that which Section 10(b) permits, and it cannot through rulemaking overrule Supreme Court precedent. Thus, Rule 10b5-2 should have been declared invalid, and

Count 1 of the Amended Complaint against McGee, which does not attempt to allege a relationship of trust and confidence outside of Rule 10b5-2, cannot serve as the basis for the SEC's Section 10(b) claim.

Even if Rule 10b5-2 was validly promulgated, the SEC fails to show there is no genuine issue of material fact. With the facts presented, the SEC cannot demonstrate that McGee and Maguire had a relationship of trust and confidence giving rise to a duty of confidentiality, or that the information purportedly disclosed by Maguire fell within the scope of any confidential relationship. Because Maguire never previously discussed confidential business information with McGee, no confidential relationship covering this type of disclosure could have existed.

### B. Mr. McGee is Only Responsible for His Personal Insider Trading.

#### 1. If Disgorgement is Ordered, Mr. McGee Should Only Be Ordered to Disgorge His Personal Gains from Insider Trading.

Based on the fact of his conviction, the SEC seeks summary judgment of Mr. McGee's trading, and if the Court grants summary judgment, the SEC seeks disgorgement. Disgorgement is an equitable remedy that the Court may enter in its discretion, SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir. 1997), and is designed to deny the violator of his or her unlawful gains and prevent unjust enrichment.[1] See SEC v. Downe, 969 F. Supp. 149, 158 (S.D.N.Y. 1997), aff'd sub nom. SEC v. Warde, 151 F.3d 42 (2d Cir. 1998). While a court has discretion to order a defendant to disgorge his tippee's profits, courts frequently limit disgorgement to the personal gains of the individual defendant. Downe, 969 F. Supp. at 158

---

[1] The SEC argues that disgorgement can also be used "to deter others from violating securities laws." (SEC Memo. at 60.) However, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." U.S. v. Halper, 490 U.S. 435, 449 (1989).

5

(ordering defendant only disgorge his personal profits from insider trading, not the downstream profits of his co-defendant/brother); see also SEC v. Gowrish, No. C 09-05883 SI, 2011 WL 2790482, at *8 (N.D. Cal. July 14, 2011) aff'd, 510 F. Appx. 588 (9th Cir. 2013) (limiting disgorgement to defendant's personal gains from insider trading); SEC v. Falbo, 14 F. Supp. 2d 508, 528 (S.D.N.Y. 1998) (ordering that disgorgement of each misappropriating tipper and tippee is limited to their respective individual profits).

Stated another way, if the Court orders disgorgement, "the amount must be reasonable, i.e. approximately equal to the unjust enrichment" to Mr. McGee. See Hateley v. SEC, 8 F.3d 653, 656 (9th Cir. 1993) (limiting disgorgement to the funds defendant had a right to receive) (citing SEC v. Washington County Utility Dist., 676 F.2d 218, 227 n.20 (6th Cir.1982)). Courts evaluate whether a reasonable disgorgement amount should include tippee profits by looking at whether the individual defendant "derived any financial benefit from the illegal trading of anyone he tipped," Falbo, 14 F. Supp. 2d at 528 n.25 (citing Downe, 969 F. Supp. at 158), or whether the defendant "controlled all of the illegally obtained funds that the SEC requests that the Court order disgorged." Gowrish, 2011 WL 2790482, at *8 n.7.

In Downe, Gregory Warde received insider information about a pending acquisition misappropriated by his brother, Thomas. 969 F. Supp. at 152. Although the Court found Thomas liable for insider trading, it limited Thomas' disgorgement to the profits he controlled. Id. at 158. The court explained that Thomas could be ordered to disgorge any profits made by him personally or by trusts that he controlled, but not any gains received by his brother, Gregory:

> [T]he SEC has failed to show how Warde benefitted in any way from his brother's trades. As noted above, the remedy of disgorgement is designed to prevent the unjust enrichment of the violator; here, the SEC has failed to show how Warde was enriched by his brother's trades. Absent such evidence, and keeping in mind

6

>that the goal of disgorgement is not to punish but to return ill-gotten gains, I decline to order Warde to disgorge the profits of Gregory Warde's trades.

Id.

Similarly in Falbo, the court entered summary judgment against two defendants; Falbo—who misappropriated and traded on information regarding the planned acquisition of Pillsbury by Grand Met—and Meade—who received Falbo's tip and traded on it. 14 F. Supp. 2d at 524-25. Falbo obtained inside information from his wife, an executive for Grand Met that worked on the Pillsbury deal. Id. at 514. Falbo then told Meade, his friend and a secretary in Grand Met's building, that Pillsbury was an acquisition target. Id. at 514-15. In setting the amount for Falbo's disgorgement, the Court rejected the SEC's request that Falbo and Meade disgorge any more than their personal gains from insider trading because "the SEC fail[ed] to present any evidence indicating that Falbo derived any financial benefit from the illegal trading of anyone he tipped[.]" Id. at 528 n.25.

Here, if the Court orders disgorgement, Mr. McGee should only be required to disgorge his personal profits. As in Downe and Falbo, Mr. McGee received no "financial benefit" from Mr. Zirinsky's or the Relief Defendants' trading. See Down, 969 F. Supp. at 158; Falbo, 14 F. Supp. 2d at 528. In its brief, the SEC merely cites cases that acknowledge the Court's discretion to order broader disgorgement, but it fails to provide any analysis as to why such disgorgement is appropriate here. The only potential benefit referenced in the SEC's motion is that Mr. McGee and Mr. Zirinsky discussed combining businesses during the period in which Mr. McGee's improper trades occurred. (SEC Statement of Facts at ¶¶ 80-85). However, the combined business entity—and any resultant share of profits—did not begin until January 2009, nearly six months after the alleged trades occurred. (See Mr. McGee's Response to SEC's Statement of Facts at ¶ 85.) Therefore, Mr. McGee never controlled any profits nor derived any

7

benefit from trades made by other Defendants and any request that Mr. McGee disgorge those additional amounts is unreasonable. See Downe, 969 F. Supp. at 158; Gowrish, 2011 WL 2790482, at *8 n.7. The SEC's request that Mr. McGee disgorge nearly five times the amount of profits he received and controlled would serve punitive, not equitable, purposes.[2] Accordingly, disgorgement, if ordered, should be limited to Mr. McGee's personal profits from his trades.

### 2. Mr. McGee is Not Jointly and Severally Liable for Any Downstream Tipping.

In a securities case, joint and several liability may be appropriate "unless the liability is reasonably apportioned." Hughes Capital Corp., 124 F.3d at 455. To impose joint and several liability, the Third Circuit requires that two or more individuals "collaborate or have close relationships in engaging in the illegal conduct." Id. However, when reasonable apportionment is not present, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." SEC v. Teo, 746 F.3d 90, 105 (3d Cir. 2014), cert. denied, 135 S.Ct. 675 (2014).

In Hughes Capital Corp., the defendants were jointly and severally liable for their ill-gotten profits obtained by defrauding investors through a jointly conceived and executed stock scheme. Id. at 455. Three defendants, a husband, wife, and their longtime bookkeeper, purchased a shell corporation, Hughes Capital, launched a fraudulent initial public offering, and purchased at least 88% of the shares. Id. at 451-52. Defendants then hired a public relations firm to issue press releases touting Hughes' plan to purchase four other businesses, but the

---

[2] On March 19, 2015, the SEC filed Notices of Consent for Jillynn, Mary, Robert, and Geraldine Zirinsky in which each agreed to pay the SEC's requested disgorgement amount listed in the SEC's Memorandum in Support of Summary Judgment at 63. (Docket Entry Nos. 167-70.) The SEC still argues, however, that Mr. McGee, who had no access or control to any Zirinsky funds, also disgorge these funds which these Relief Defendants agreed to pay.

8

releases failed to mention that each business set to be acquired was controlled by Hughes' affiliates. Id. at 452. When the stock price rose on this news, the defendants sold warrants on the market, transferred the proceeds between several of defendants' bank accounts, and ultimately withdrew the funds. Id. Imposing joint and several liability, the Court found all three defendants collaborated to execute their fraudulent initial public offering and their fraudulent sale of warrants. Id. The court also found the defendants shared a "'close relationship' with each other through their connection to Hughes, the other corporations used in the scheme, and the nominee accounts used to perpetuate the scheme." Id. Based on the defendants "close relationship" with the entities and accounts used in the scheme and the defendants' collaborative efforts in executing the fraud, joint and several liability was appropriate. Id.

Here, because liability can—and has—been reasonably apportioned, joint and several liability is not appropriate. See Hughes Capital Corp., 124 F.3d at 455. The SEC charted the individual profit, pre-judgment interest, and total amount of liability for each Defendant and Relief Defendant, including Mr. McGee. (SEC's Memo. at 53.) Because there is no risk of uncertainty as to the amount of profits each Defendant received, the Court should limit Mr. McGee's liability only to his personal gains as a result of his own trading. See id.

The SEC summarily calls for the Court to impose joint and several liability without performing the requisite analysis of whether Messrs. McGee and Zirisnky engaged in collaborative activity and had a close relationship in their alleged engagement in a fraudulent scheme.[3] The SEC skips this step because it failed to allege sufficient facts to show that Messrs.

---

[3] The Hughes Court found joint and several liability appropriate because the defendants both collaborated and held close relationships specifically related to the fraudulent conduct. 124 F.3d at 455. Thus, the SEC must prove both to establish joint and several liability. Id.; see also SEC v. Calvo, 378 F.3d 1211 (11th Cir. 2004) (holding defendants jointly and severally liable because they "had the requisite close relationship" and both

McGee and Zirinsky engaged in the necessary collaborative action and had the close relationship required to impose such sweeping liability upon Mr. McGee. The SEC relies upon only vague statements of friendship between Mr. McGee and Mr. Zirinsky. The only uncontroverted facts offered by the SEC include that Messrs. McGee and Zirinsky "were good friends," "took ski trips together," and "often spoke on the telephone." (SEC's Statement of Facts at ¶¶ 145, 147, 153.) Unlike the defendants in Hughes Capital Corp., the SEC does not allege that Messrs. McGee and Zirinsky jointly developed and executed a scheme to defraud or jointly held accounts to share in the proceeds of that fraud. See 124 F.3d at 455. Moreover, the SEC fails to show Messrs. McGee and Zirinsky had a "close relationship" that facilitated their perpetration of an alleged scheme to trade securities based on inside information. See id. Taken as true, the SEC's facts only reveal a friendship that is parallel and ancillary to any of the alleged conduct in the Amended Complaint. Therefore, as a matter of law the SEC fails to establish the necessary close relationship and collaboration required to impose joint and several liability on summary judgment.

### C. No Penalty for Insider Trading Should be Imposed on Mr. McGee.

As the SEC points out, Section 21A of the Exchange Act allows civil penalties for insider trading. (SEC Memo. at 64.) Congress added the civil penalty provisions to deter the defendant from future violations and considers the following factors in weighing whether to assess such a penalty: (1) the defendant's culpability; (2) the profits gained; (3) the repetitive

---

collaborated in a single scheme to violate the securities laws); Hateley, 8 F.3d at 656 (finding joint and several liability where defendants "acted collectively . . . and because of the close relationship among . . . them."); SEC v. First Jersey Securities, 101 F.3d 1450, 1475 (2d Cir. 1996) (affirming joint and several liability where "a firm ha[d] received gains through its unlawful conduct [and] . . . its owner and chief executive officer ha[d] collaborated in that conduct."); but see SEC v. Whittemore, 659 F.3d 1, 11 (D.C. Cir. 2011) (finding the SEC need only prove collaboration or a close relationship).

nature of the unlawful conduct; and (4) the deterrent effect of a penalty on the defendant. (See id. (citing SEC v. Sekhri, No. 98 Civ. 2320(RPP), 2002 WL 31100823, at *18 (S.D.N.Y. Jul. 22, 2002).)

Mr. McGee has been adequately deterred and a civil penalty is not necessary. As part of his criminal sentencing, this Court imposed a criminal penalty of $100,000.00 on Mr. McGee. In addition, Mr. McGee received a six month prison sentence, he is in the midst of divorce proceedings, and despite an otherwise sterling record, he has lost his livelihood. Taken together, Mr. McGee has been more than adequately dissuaded from violating the securities laws. As this Court stated in sentencing Mr. McGee:

> We get defendants who come into the courtroom who could care less about what anybody thinks about them. They will do the time. They will move on. The conviction does not mean much. And then there are other folks. Folks who enjoy a fine reputation, who are looked upon by their peers or looked upon by their neighbors, looked upon by their families as upstanding and pillars of the community. The mere charge, not just the conviction, is devastating. And you feel it. And you know it. That is punishment. You are going to live with that. You are going to wonder what people think about you when you walk down the street that you know. . . . But I take that into consideration, that that punishment to you is much greater than it might be to somebody else.

(Sentencing Transcript at 65:25-66:14, attached hereto as Exhibit 1.) The Court recognized the devastating effect Mr. McGee's conviction has had and acknowledged that Mr. McGee's single misstep destroyed his life. Therefore, an additional civil penalty need not be imposed on Mr. McGee.

Alternatively, if the Court deems a civil penalty is appropriate, Mr. McGee asks this Court for leniency. The SEC cites the Gupta decision in support of its argument that a significant civil penalty should be imposed, but unlike Mr. McGee, Gupta was convicted on three counts of securities fraud "involving multiple material disclosures of inside information." SEC v. Gupta, No. 11 CIV. 7566 JSR, 2013 WL 3784138, at *2 (S.D.N.Y. July 17, 2013) aff'd,

11

569 F. Appx, 45 (2d Cir. 2014) cert. denied, 135 S. Ct. 976 (2015). Such recurrent conduct "resulted, in effect, in millions of dollars of losses to those who traded their stock without the benefit of Gupta's inside information." Id. Contrary to Gupta's actions, Mr. McGee engaged in an isolated, although improper, incident of insider trading. In fact, this Court called Mr. McGee's offense "an abbreviated departure from an otherwise exemplary life." (Sentencing Transcript, Ex. 1, at 66:21-22.)

Mr. McGee respectfully submits that any civil penalty be issued in light of the significant criminal penalties he has already faced. In SEC v. Contorinis, No. 09 CIV. 1043 RJS, 2012 WL 512626, at *6 (S.D.N.Y. Feb. 3, 2012) aff'd, 743 F.3d 296 (2d Cir. 2014), Judge Sullivan of the Southern District of New York ordered the defendant to pay a $1 million civil penalty, separate and apart from criminal sanctions, for unlawful trades that yielded $7.2 million in illicit profits. The civil penalty comprised approximately 13% of the defendant's ill-gotten gains. Id. The court noted that "[a]ny civil penalty greater than that, however, would be unduly harsh in light of the severe criminal penalties that have already been imposed on Defendant." Id. Mr. McGee requests treatment similar to the defendant in Contorinis. In addition to all the intangible things that Mr. McGee has lost, along with the Court's ordered disgorgement and the criminal penalty already imposed, a civil fine not to exceed $45,876.61—or 13% of Mr. McGee's illicit profits including pre-judgment interest as calculated by the SEC—adequately punishes Mr. McGee and "mak[es] insider trading a money-losing proposition[.]" See Gupta, 2013 WL 3784138, at *2.

### D. No Permanent Injunction Should be Imposed on Mr. McGee.

As the SEC wrote, "[a]n injunction is appropriate when 'there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct.'" (SEC's Memo at 59 (citing SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir.1980)).) When the Court

sentenced Mr. McGee, it observed: "I look at the need to protect the public from the Defendant's crime factor and I say, not Mr. McGee. That is not a factor in this case. He is not going to commit another crime in his life. This was out of character." Sentencing Transcript, Ex. 1, 67:10-14. Because Mr. McGee is not a threat to engage in such illegal conduct again, a permanent injunction need not be imposed.

## IV. CONCLUSION

For all of the foregoing reasons, Mr. McGee respectfully requests that the Court deny the SEC's requested relief in its Motion for Summary Judgment against him.

Respectfully Submitted,

Dated: March 20, 2015
/s/ John C. Grugan
John C. Grugan (Attorney No. 83148)
Paul J. Koob (Attorney No. 309029)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

Attorneys for Defendant Timothy J. McGee