# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

  v.

TIMOTHY J. MCGEE and
MICHAEL W. ZIRINSKY,

    Defendants, and

KELLIE F. ZIRINSKY,

    Relief Defendant.

Civil Action No. 2:12-cv-01296-TJS

<u>Jury Trial Demanded</u>

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS TIMOTHY J. MCGEE AND MICHAEL W. ZIRINSKY

G. Jeffrey Boujoukos (PA Bar No. 67215)
David A. Axelrod
Scott A. Thompson (PA Bar No. 90779)
John V. Donnelly III (PA Bar No. 93846)
Nuriye C. Uygur (PA Bar No. 88930)

Attorneys for Plaintiff:

SECURITIES AND EXCHANGE
COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100

March 31, 2015

TABLE OF CONTENTS

|   |   | PAGE |
|---|---|---|
| ARGUMENT | | 2 |
| I. | ZIRINSKY MISTATES THE STANDARD FOR TIPPEE LIABILTY | 2 |
| II. | ZIRINSKY DOES NOT OFFER ANY DISPUTED ISSUES OF MATERIAL FACTS TO PRECLUDE SUMMARY JUDGMENT | 4 |
| | A. The Undisputed Facts Establish That Maguire Confided In McGee About The Merger Before Defendants Improperly Bought Philadelphia Consolidated Stock | 4 |
| |     1. Maguire's Testimony About Providing the Confidential Information To McGee Is Consistent And Unrebutted | 4 |
| |     2. Maguire's Investigative Testimony Is Akin To An Affidavit | 5 |
| |     3. Zirinsky's General Attack On Maguire's Credibility Is Insufficient To Defeat Summary Judgment | 6 |
| | B. There Is No Material Dispute Regarding The Zirinskys' Trading | 7 |
| III. | DEFENDANTS' ASSERTION OF THE FIFTH ADMENDMENT HAS PREJUDICED THE COMMISSION, AND AN ADVERSE INFERENCE IS APPROPRIATE | 8 |
| IV. | MCGEE'S CRIMINAL CONVICTION IS PERSUASIVE, PROBATIVE, ADMISSABLE EVIDENCE AGAINST ZIRINSKY | 9 |
| V. | ZIRINSKY'S REMAINING ARGUMENTS HAVE EITHER BEEN REJECTED BY THIS COURT OR THE COURT OF APPEALS, OR HAVE NO BEARING ON THE MOTION FOR SUMMARY JUDGMENT | 10 |
| VI. | RELIEF | 11 |
| CONCLUSION | | 13 |

TABLE OF AUTHORITIES

CASES                                                                                                          PAGE(S)

Anderson v. Liberty Lobby, 477 U.S. 242 (1986)..................................................................6

Dirks v. SEC, 463 U.S. 646 (1983)........................................................................................ 2

H&R Grenville Fine Dining, Inc. v. Bay Head, 2011 U.S. Dist. LEXIS 145447
    (D.N.J. Dec. 19, 2011) ...................................................................................................6

Lauren W. ex rel Jean W. v. DeFlaminis, 480 F.3d 259 (3d Cir. 2007).........................................7

Reeves v. Sanderson Plumbing Prods., 530 U.S. 133 (2000) ..............................................6

SEC v. Antar, 44 Fed. Appx. 548 (3d Cir. 2002) ................................................................6

SEC v. Contorinis, No. 09 CIV. 1043, 2012 WL 512626 (S.D.N.Y. Feb. 3, 2012)......................12

SEC v. Fuhlendorf, 2011 U.S. Dist. LEXIS 27948 (W.D. Wa. Mar. 17, 2011)...............................5

SEC v. Graystone Nash, Inc., 25 F.3d 187 (3d Cir. 1994) ......................................................9

SEC v. Lowery, 633 F. Supp. 2d 466 (W.D. Mich. 2009)................................................. 5-6

SEC v. McGee, 895 F. Supp. 2d 669 (E.D. Pa. 2012) ...............................................................2, 3

SEC v. Obus, 693 F.3d 276 (2d Cir. 2012)..............................................................................2, 3

United States v. McGee, 955 F. Supp. 2d 466 (E.D. Pa. 2013) ....................................... 2

United States v. McGee, 763 F.3d 304 (3d Cir. 2014) ................................................................2

RULES, STATUTES AND REGULATIONS

Fed R. Evid. 401 .............................................................................................................10

Fed R. Evid. 403 .............................................................................................................10

Fed. R. Civ. Pro. 56(c) ......................................................................................................5

17 C.F.R. § 240.10b-5-2 .................................................................................................10

As the Commission made clear in its opening memorandum of law there is no issue of material fact as to McGee's liability as a tipper and Michael Zirinsky's liability as a tippee who bought Philadelphia Consolidated Holdings Corp. ("PHLY") stock for himself and his family members and caused his good friend to buy the stock as well. (Pl.'s Opening Br. at 27. (Docket No. 163-1.) Tellingly, McGee does not even contest liability. (McGee's Opp'n Br. (Docket No. 179).)

McGee concedes liability because he must, and while not preclusive, this concession applies with equal force to Zirinsky. Although Zirinsky opposes liability, he does not and cannot point to a single piece of evidence that would create a disputed issue of material fact which, if resolved in his favor, would enable a rational jury to find for him. The undisputed evidence establishes his liability conclusively:

- Chris Maguire told McGee the material non-public information about the impending merger sometime between June 30 and July 14, 2008.

- McGee bought PHLY stock based on that information beginning on July 15.

- McGee called Michael Zirinsky the morning of July 17 immediately after he spoke with Maguire.

- Within three hours of speaking with McGee on July 17, Zirinsky and his family bought over 21,000 shares of PHLY stock at a cost of over $700,000.

- During that same three-hour period, Zirinsky spoke with his good friend Paolo Lam, who then bought over 33,000 shares of PHLY stock at a cost of over $1.1 million.

- Less than a week later, on July 23, the acquisition of Philadelphia Consolidated was publicly announced. After the announcement, the price per share of PHLY stock nearly doubled.

- After a one-week investment in PHLY stock, McGee made over $290,000; the Zirinsky family made over $560,000; and Paolo Lam made over $780,000.

- McGee was criminally convicted of insider trading for this conduct. The Court of Appeals affirmed the verdict and this Court's decision upholding the verdict.[1]

- McGee and Zirinsky have asserted the Fifth Amendment in response to all discovery in this case and all substantive questions asked during their depositions.

This unrebutted evidence leads to only one conclusion, McGee tipped Zirinsky and Zirinsky traded on the basis of that information.

## ARGUMENT

### I. ZIRINSKY MISTATES THE STANDARD FOR TIPPEE LIABILITY.

Zirinsky incorrectly contends that the Commission must prove that he knew or was reckless in not knowing that McGee misappropriated the material non-public information from Maguire and that Zirinsky knew McGee and Maguire had a relationship of trust and confidence. (Zirinsky's Opp'n Br. at 17-22 (Docket No. 175).) Zirinsky is wrong.

The Commission need only show that Zirinsky: (1) knew or should have known or consciously avoided knowing that the information had been obtained in breach of a duty; and (2) that he knowingly or recklessly traded on the information. Dirks v. SEC, 463 U.S. 646, 660 (1983); SEC v. Obus, 693 F.3d 276, 288-89 (2d Cir. 2012) ("[T]ippee liability can be established if a tippee knew or had reason to know that confidential information was initially obtained and transmitted improperly (and thus through deception), and if the tippee intentionally or recklessly traded while in knowing possession of that information."); SEC v. McGee, 895 F. Supp. 2d 669, 683 (E.D. Pa. 2012). The knowledge standard applicable to each element is distinct. See Obus, 693 F.3d at 288. The Commission "need not prove that [Zirinsky] knew the insider and had any

---

[1] It is troubling that Zirinsky does not appear to cite or even acknowledge the Third Circuit's opinion in United States v. McGee. 763 F.3d 304 (3d Cir. 2014), aff'g, 955 F. Supp. 2d 466 (E.D. Pa. 2013). Not only is that decision binding precedent in this Circuit, but it is particularly relevant here because the facts are the same. Likewise, it is also disturbing that Zirinsky fails to take note of this Court's opinion denying McGee's motion for a new criminal trial. 955 F. Supp. 2d at 466.

direct link to him . . . or that [Zirinsky] knew how the breach occurred." McGee, 895 F. Supp. 2d at 683 (internal citations omitted). See also Obus, 693 F.3d at 288.

Here, the undisputed evidence easily proves Zirinsky knew or should have known that the information was obtained in breach of a duty. (Pl.'s opening Br. at 12-22, 35-44.) In denying Zirinsky's motion to dismiss, this Court previously stated: "Circumstantial evidence probative of scienter includes the sophistication of the tippee, the temporal proximity of the communications between the tippee and the insider or alleged misappropriator and the tippee's trades, and trades atypical to the tippee's investment patterns." McGee, 895 F. Supp. 2d at 683-84. All of that evidence is present here and unrebutted. Zirinsky was a registered representative (stockbroker) with 13 years of experience. He knew or should have known that information relating to an unannounced acquisition of a company was material, nonpublic information and confidential. Zirinsky also knew that an outsider like McGee, who did not work for Philadelphia Consolidated, should not have been in possession of or using such information. In addition, the magnitude and speed of Zirinsky's PHLY purchases demonstrate that Zirinsky knew the value of this inside information. It was a sure thing. Therefore, Zirinsky knew, should have known, or consciously avoided that McGee came to possess the information and passed it on to Zirinsky because either McGee or someone else breached a duty.

That conclusion is further supported by Zirinsky's silence. Zirinsky has asserted the Fifth Amendment privilege and does not deny that he knew or should have known that the information was obtained in breach of a duty. Zirinsky offers no facts to rebut or undercut this conclusion.

These same undisputed facts also show that Zirinsky knowingly traded while in possession of that information. The timely phone calls, the explosion of trading in a three hour period after he spoke with McGee the morning of July 17, and Zirinsky's silence lead to one, and

only one, rational conclusion—Zirinsky intentionally traded on the information he received from McGee.

When the correct standards are applied, the undisputed evidence establishes that Zirinsky knew, should have known, or consciously avoided knowing that the information had been obtained in breach of a duty, and he knowingly or recklessly traded on that information.

## II. ZIRINSKY DOES NOT OFFER ANY DISPUTED ISSUES OF MATERIAL FACTS TO PRECLUDE SUMMARY JUDGMENT.

### A. The Undisputed Facts Establish That Maguire Confided In McGee About The Merger Before Defendants Improperly Bought Philadelphia Consolidated Stock.

Unable to point to any evidence that would create an issue of material fact, Zirinsky attempts to manufacturer an issue of fact by attacking Chris Maguire's testimony by arguing that: (1) Maguire's testimony is inconsistent; (2) Maguire's investigative testimony should not count; and (3) a jury might not believe Maguire. For the reasons discussed below, these arguments fail. Maguire's testimony is consistent and unrebutted. It establishes that McGee knew the material non-public information regarding the acquisition before McGee, Zirinsky, Zirinsky's family, and Zirinsky's friend began buying PHLY stock in July 2008.

#### 1. Maguire's Testimony About Providing The Confidential Information To McGee Is Consistent And Unrebutted.

Maguire testified unequivocally that he told McGee about the PHLY acquisition during the first two weeks of July 2008. Maguire testified that he had a slip and drank alcohol at a golf tournament on June 27th. Maguire said that he "immediately started going back to [AA] meetings" on June 30, 2008 and, soon thereafter, told McGee about drinking alcohol due to the pressure he was feeling from the impending PHLY sale. (Inv. Test. of Chris Maguire, Exh. 2,

70:24-71:13; 72:4-72:19; 75:20-77:21.)[2] Maguire confirmed that he disclosed the information regarding the PHLY acquisition before the "14th". (Id. at 83:2-84:19.) Maguire's testimony was clear and uncontroverted, and contrary to Zirinsky's baseless assertion, Maguire's trial testimony was in accord.[3]

### 2. Maguire's Investigative Testimony Is Akin To An Affidavit.

Unable to undermine Maguire's testimony, Zirinsky urges the Court to ignore Maguire's investigative testimony because it is "unreliable" and was not subject to cross examination. First, as noted above, this is not true – Maguire's testimony is uncontroverted. Second, whether or not the transcript would itself be admissible is not the standard at summary judgment. See Fed. R. Civ. Pro. 56(c). His investigative testimony was sworn and subject to penalty of perjury. It is no different than an affidavit, which is clearly allowed under the Rules. Fed R. Civ. P. 56(c)(1)(A) (authorizing courts to consider affidavits and declarations when ruling on motions for summary judgment). Indeed, numerous courts have recognized that it is appropriate to consider investigative testimony at summary judgment. See, e.g., SEC v. Fuhlendorf, 2011 U.S. Dist. LEXIS 27948, at *29 (W.D. Wa. Mar. 17, 2011) (finding that it "is sufficient for the Court to consider the investigative testimony to be admissible for summary judgment purposes even if its form is ultimately inadmissible at trial"); SEC v. Lowery, 633 F. Supp. 2d 466, 477 (W.D.

---

[2]   Exhibits are to the Response of Plaintiff Securities and Exchange Commission to Defendant Zirinsky's Counterstatement of Undisputed Facts, filed along with this reply brief.

[3]   At McGee's criminal trial, Maguire testified consistently that he told McGee about the PHLY sale "sometime in the two weeks" following June 30, 2008. (Crim Test. of Chris Maguire, Exh. 3, 72:10-72:14; 166:2-166:6.) Maguire has never testified in any way that supports Zirinsky's contention that it is unclear whether Maguire told McGee about the PHLY sale before McGee and Zirinsky began acquiring PHLY stock in July 2008.

5

Mich. 2009) (at summary judgment, the Court could consider investigative testimony "on the same basis as other competent deposition or affidavit evidence").[4]

### 3. Zirinsky's General Attack On Maguire's Credibility Is Insufficient To Defeat Summary Judgment

To successfully oppose a motion for summary judgment, a defendant must produce *evidence* from which a jury could decide in his favor. Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986). A defendant cannot successfully oppose a motion for summary judgment with mere speculation or conjecture or by claiming that the moving party's evidence is not credible. See, e.g., SEC v. Antar, 44 Fed. Appx. 548, 554 (3d Cir. 2002) (unreported); H&R Grenville Fine Dining, Inc. v. Bay Head, 2011 U.S. Dist. LEXIS 145447, *26 (D.N.J. Dec. 19, 2011) ("[t]he nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible.") (granting summary judgment).

Unable to adduce any contradictory evidence, Zirinsky attacks Maguire's credibility, arguing that the case should go to trial because Maguire is an "interested" witness and that the jury might not believe his unrebutted testimony. (Zirinsky's Opp'n Br. at 5-6 (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 151 (2000)). First, Maguire is not an "interested" witness. He is a third-party fact witness, just as he was in the criminal trial. And, as Maguire testified during that trial, he has never been promised anything for his testimony.[5] Second, the Court of Appeals for the Third Circuit has expressly rejected Zirinsky's interpretation of *Reeves*, stating: "The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an

---

[4] Moreover, Zirinsky could have deposed Maguire during discovery, but elected not to.

[5] At the criminal trial, defense counsel asked Maguire if he was aware of "any assurance from the SEC about your status in the investigation before you went in to speak to them" and Maguire stated "I'm not aware of any." (Crim. Test. of Chris Maguire, Exh. 3, 135:23-136:4.)

6

interested witness." Lauren W. ex rel Jean W. v. DeFlaminis, 480 F.3d 259, 271-72 (3d Cir. 2007). The Court of Appeals explained further: "For example in a controlled intersection traffic accident case if the moving party on a motion for summary judgment presents his deposition testimony that the light was green for him and red for the other party and there is no contrary evidence, and there is nothing implausible about the deposition, in considering the motion the court should accept the deposition testimony as true. If it does not do so then, contrary to all precedent, it would allow the non-moving party to defeat the motion with mere allegations." Id. at 272 n.13.

This case is as simple as the Court of Appeals' hypothetical. Zirinsky offers no evidence which, if true, could create a material issue of fact that a jury would need to resolve. He offers only allegations, speculation and conjecture that a jury might not believe Maguire's testimony. That is insufficient to evade summary judgment.

**B. There Is No Material Dispute Regarding The Zirinskys' Trading.**

Faced with the massive, well-timed, and incredibly profitable trading by the Zirinsky family, Zirinsky again attempts to manufacture a factual dispute where none exists. He challenges the Commission's summary of the trading facts as unreliable and inadmissible. But, stripped of hyperbole and misdirection, he actually does not challenge the core trading facts at all.[6]

The facts surrounding Zirinsky's PHLY trading are uncontestable. The trading records speak for themselves. Zirinsky does not dispute the dates, times, or amounts of the trades, or that

---

[6] The Commission does need to correct one statement in Mr. Koster's second declaration. Paragraph 33 of the declaration states "Immediately after the purchases, PHLY was the only security held in Kellie's entire portfolio at Ameriprise, including her retirement account." But, at that time, Kellie did maintain one other security position in her overall portfolio – a mutual fund worth approximately $6,000. This has no material impact on the Commission's arguments.

7

the Zirinsky Family and Lam had never bought PHLY stock before. (Commission's Statement of Undisputed Facts ¶ 326 (Docket No. 164).) Zirinsky also does not dispute that the Zirinsky Family's purchases were the largest single-day purchases (in dollars) ever made by the Zirinsky family members. (Id. ¶¶ 267, 284, 291, 303, 312.) There is no genuinely disputed issue of material fact for the jury to decide regarding the trading.[7]

## III. DEFENDANTS' ASSERTION OF THE FIFTH AMENDMENT HAS PREJUDICED THE COMMISSION, AND AN ADVERSE INFERENCE IS APPROPRIATE

The Court should reject Zirinsky's argument that defendants' assertion of the Fifth Amendment has not prejudiced the Commission. (Zirinsky's Opp'n Br. at 27-30.) After defendants learned that Maguire was going to testify truthfully that he told McGee the material non-public information about the PHLY acquisition—defendants asserted the Fifth Amendment and have since refused to provide any substantive answer in response to all discovery and deposition questions.

Because of defendants' Fifth Amendment assertion, the Commission has not been able to learn what McGee and Zirinsky discussed immediately before Zirinsky began purchasing PHLY stock. Only McGee and Zirinsky are able to testify about what they discussed during these phone calls. Likewise, only McGee and Zirinsky could address why they traded when they did and in the amounts they did. Defendants' silence has harmed the Commission's investigation and prosecution of this case, and an adverse inference is appropriate.[8]

---

[7] Zirinsky also completely disregards the Hong Kong trading by Lam, Leung, and the Ares fund, claiming authenticity issues. But Zirinsky's call to Lam is on his own cell phone records. Moreover, the trading was done at a U.S. broker-dealer (Interactive Brokers) – no different than Wachovia, Charles Schwab, or Ameriprise. Zirinsky ignores this evidence because he has no counter.

[8] That McGee and Zirinsky initially testified during the Commission's investigation does not lessen the prejudice to the Commission—it heightens the prejudice, because they lied. McGee was convicted of perjury for his lies during that testimony. And while Zirinsky was not

8

In the Third Circuit, drawing such an inference is permitted. (Pl.'s Opening Br. at 46-47) (citing cases, including SEC v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994).) Moreover, numerous courts across the country have drawn an adverse inference against defendants who assert the Fifth Amendment in granting the Commission's motion for summary judgment. (Id. at 48 (citing cases).[9]

## IV. MCGEE'S CRIMINAL CONVICTION IS PERSUASIVE, PROBATIVE, ADMISSIBLE EVIDENCE AGAINST ZIRINSKY

In its opening brief, the Commission explained that the criminal conviction against McGee for insider trading estopped McGee from challenging liability for his trading and several elements of the claim against McGee for tipping, and was persuasive evidence of those same elements against Zirinsky. (Pl.'s Opening Br. at 27-29.) Specifically, after a fully litigated and vigorously defended trial, the jury found McGee guilty of insider trading on the same facts present here. In rendering a guilty verdict, the jury necessarily found beyond a reasonable doubt that: (1) McGee and Maguire had a relationship of trust and confidence under Rule 10b5-2; (2) Maguire told the material, non-public information to McGee in the context of that relationship not later than July 14, 2008; and (3) McGee breached his duty to Maguire when he traded on that information. Obviously, these conclusions have preclusive effect against McGee. Although they are not preclusive against Zirinsky, they are persuasive.

---

criminally charged, he lied too. Indeed, Zirinsky's effort to conceal the truth about his trading with a fabricated story is further evidence of his scienter.

[9] There is no dispute that defendants' invocation of the Fifth Amendment by itself is an insufficient basis to grant summary judgment. In this case, however, the adverse inference from their invocation of the Fifth Amendment does not stand alone, it augments the overwhelming and undisputed evidence discussed above. Moreover, the cases relied on by Zirinsky all originate in the Second Circuit and are very different factually from this case.

9

Without citing any law whatsoever, Zirinsky contends that the verdict against McGee should not be admissible against Zirinsky under Federal Rules of Evidence 401 and 403. (Zirinsky's Opp'n Br. at 30-31.) Again, Zirinsky is wrong.

Because, as Zirinsky concedes, his liability derives from McGee's liability, there can be no dispute that the jury's conclusions are relevant and thus admissible under Rule 401. They are also admissible under Rule 403, which only precludes relevant evidence where the probative value of that evidence is *substantially outweighed* by the danger of *unfair* prejudice. Fed. R. Evid. 403 (emphasis added). The criminal jury's conclusions are highly probative—elements of the claims against both McGee and Zirinsky were found satisfied beyond a reasonable doubt on the same evidence in this case. Zirinsky's contention that he will be "unfairly prejudiced" by the Court's consideration of this evidence with respect to summary judgment is baseless.

## V. ZIRINSKY'S REMAINING ARGUMENTS HAVE EITHER BEEN REJECTED BY THIS COURT OR THE COURT OF APPEALS, OR HAVE NO BEARING ON THE MOTION FOR SUMMARY JUDGMENT.

The remainder of Zirinsky's opposition consists of arguments that have already been rejected or have no bearing on this motion. Zirinsky argues that prior sharing of *business confidences* is required in order to find a duty arising from a relationship of trust or confidence under Rule 105b-2(b)(2). (Zirinsky's Opp'n Br. at 14-15.) But as explained in the Commission's opening brief, the Court of Appeals rejected that identical argument and held that the rule does not require sharing of business confidences. (Pl.'s Opening Br. at 31, n.16.) Zirinsky also argues that a relationship based on Alcoholics Anonymous alone cannot give rise to a duty of trust and confidence between its members. (Zirinsky's Opp'n Br. at 9-11.) Zirinsky ignores that the Commission has not argued that in its motion for summary judgment. Zirinsky

10

has merely created that strawman to attempt to distract the Court from the absence of any material fact in dispute.[10]

## VI.  RELIEF

Zirinsky fails to address substantively the Commission's arguments regarding relief. He declares it "unlikely" that the Court will enter summary judgment, unilaterally asserts that he preserves all such arguments, but declines to address the arguments put forth by the Commission. (Zirinsky's Opp'n Br. at 32, n.25.)

As the Commission explained in its opening brief, defendants should be enjoined from future violations, disgorge their ill-gotten gains with prejudgment interest for themselves and downstream traders (to the extent such funds have not already been disgorged by other parties), and be required to pay a substantial civil penalty. (Pl.'s Opening Br. at 49-56.)

McGee and Zirinsky should be enjoined. Their conduct was deliberate and repeated. After McGee stole the information from Maguire, he traded in PHLY stock on multiple days. He borrowed substantial sums to increase his leverage and realized huge profits. He also tipped Zirinsky, leading to the ridiculous trading by the Zirinsky Family and Lam. Moreover, when confronted by the Commission staff, McGee and Zirinsky lied under oath. To date, neither defendant has acknowledged his misconduct or accepted responsibility for his actions. Accordingly, an injunction is appropriate.

Although he pleads for leniency, McGee does not seriously dispute that he should be held liable for disgorging his own profits and prejudgment interest on his profits. Anything less would permit him to keep the proceeds of his theft of the information from Maguire. He should

---

[10]    Likewise, Zirinsky misrepresents the Commission's responses to his requests for admission. (Zirinsky's Opp'n Br. at 18.) As demonstrated in the Commission's motion for summary judgment, the undisputed facts support judgment for the Commission on its claim against Zirinsky as a matter of law.

11

also be held jointly and severally liable for the disgorgement of any unpaid disgorgement of the downstream traders, particularly Michael Zirinsky and his wife. As McGee implicitly concedes by not contesting liability for tipping, he passed the material non-public information to Michael Zirinsky with the intent that Zirinsky trade. He should be jointly and severally liable for their ill-gotten gains and those of the downstream traders.

In addition, McGee should also pay a substantial penalty for his misconduct. The Court could impose a penalty of any amount up to three times the ill-gotten profits of McGee, the Zirinsky Family, and the downstream traders. McGee argues that if the Court imposes a civil penalty, it should follow the approach taken in SEC v. Contorinis, No. 09 CIV. 1043, 2012 WL 512626, at *6 (S.D.N.Y. Feb. 3, 2012), aff'd, 743 F.3d 296 (2d Cir. 2014). (McGee's Opp'n Br. at 12.) However, Contorinis counsels imposing a far greater penalty than McGee claims. Contorinas was a co-portfolio manager of a hedge fund, which profited by $7.2 million from insider trading. Therefore, the $1 million civil penalty imposed on Contorinis was not "13% of defendant's ill-gotten gains," as McGee asserts, but 13% of the gains of the downstream trader, the hedge fund. Here, McGee, the Zirinksy Family, Lam, Jansen Leung, and the Ares Fund collectively profited by approximately $2.15 million. As a result, applying McGee's suggested methodology (13% of $2.15 million) would yield a penalty of nearly $290,000.[11]

---

[11] We note that in the parallel criminal case, Contorinas was held jointly and severally liable for criminal forfeiture of over $12 million. That prior order influenced the Court's decision to impose a $1 million penalty in the civil case.

## **CONCLUSION**

For the foregoing reasons, and those set forth in the Commission's initial memorandum in support of its motion, the Commission's Motion for Summary Judgment should be granted.

>Respectfully submitted,
>
>/s John V. Donnelly III
>G. Jeffrey Boujoukos (PA Bar No. 67215)
>David A. Axelrod
>Scott A. Thompson (PA Bar No. 90779)
>John V. Donnelly III (PA Bar No. 93846)
>Nuriye C. Uygur (PA Bar No. 88930)
>
>Attorneys for Plaintiff:
>
>SECURITIES AND EXCHANGE
>COMMISSION
>Philadelphia Regional Office
>1617 JFK Boulevard, Suite 520
>Philadelphia, PA 19103
>Telephone: (215) 597-3100

March 31, 2015

# **CERTIFICATE OF SERVICE**

I hereby certify, this 31st day of March, 2015, that I caused to be served a true and correct copy of the Plaintiff's Memorandum in Support of its Motion for Summary Judgment Against Defendants Timothy J. McGee and Michael W. Zirinsky through the Court's electronic filing system upon the following:

John C. Grugan, Esq.
Paul J. Koob, Esq.
Ballard Spahr, LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
(Counsel for Defendant Timothy J. McGee)

Jon-Jorge Aras, Esq.
Spadea, Landard & Lignana
1315 Walnut Street, Suite 1532
Philadelphia, PA 19107
(Counsel for Defendant Michael W. Zirinsky and Relief Defendant Kellie F. Zirinsky)

s/John V. Donnelly III
John V. Donnelly III