IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO.: 2012-CV-1296 |
| v. | : : | |
| TIMOTHY J. MCGEE, *et al*., | : : | |
| Defendants. | : : | |

## **PRETRIAL MEMORANDUM SUBMITTED BY DEFENDANT TIMOTHY J. MCGEE**

Pursuant to the Court's scheduling order of September 23, 2014, Defendant Timothy J. McGee submits the following pretrial memorandum:

**a) Expert Witnesses**:

No expert witnesses have been identified by the parties. Mr. Glackin, set forth below as a fact witness, was disclosed as a precaution to the extent that any of his testimony could arguably be construed as opinion testimony pursuant to Rule 701.

**b) Potential Fact Witnesses:**

1. Christopher Maguire: Testimony demonstrating the lack of any purported relationship of trust and confidence and the lack of any disclosures within the scope of any alleged relationship.

2. Charles Glackin: Testimony about Alcoholics Anonymous ("AA"), its practices and literature, and the lack of any membership or confidentiality requirements.

3. Tyler Donald: Testimony about the format of the 6:30 A.M. Malvern AA meeting in 2008, specifically the lack of any statements regarding confidentiality.

1

4. <u>Scott Dillon</u>: Testimony about the lack of binding confidentiality requirements in AA and his conversations with Christopher Maguire.

5. <u>James Maguire, Jr.</u>: Testimony about his observations of, discussions with, and dealings with Christopher Maguire and other members of the Maguire family related to the Tokio Marine merger and any alleged disclosures.

6. <u>Sean Sweeney</u>: Testimony about his observations of, discussions with, and dealings with Christopher Maguire and other members of the Maguire family related to the Tokio Marine merger and any alleged disclosures.

7. <u>Susan Maguire</u>: Testimony about her knowledge of the Tokio Marine merger and disclosures made to third parties, and her knowledge regarding the Philadelphia Consolidated triathlon team.

8. <u>Kellie F. Zirinsky</u>: Testimony about her brokerage accounts, the trading history in the accounts and her legitimate ownership interest in these accounts.

9. <u>Jillynn Zirinsky</u>: Testimony about her brokerage accounts, the trading history in the accounts and her legitimate ownership interest in these accounts.

10. <u>Geraldine Zirinsky</u>: Testimony about her brokerage accounts, the trading history in the accounts and her legitimate ownership interest in these accounts.

11. <u>Patrick Wayman</u>: Timothy McGee's reputation as an aggressive investor and past knowledge of activities demonstrating that the trades at issue were consistent with that style of investing.

12. <u>Ari Frazer</u>: Timothy McGee's reputation as an aggressive investor and past knowledge of activities demonstrating that the trades at issue were consistent with that style of investing.

13. <u>William Miller</u>: Testimony regarding the increased trading activity of Philadelphia Consolidated (PHLY) stock in the days prior to the merger and his knowledge of Timothy McGee's trading activities demonstrating that the trades at issue were consistent with Mr. McGee's style of investing.

**c) Designation of Deposition Testimony:**

Mr. McGee designates the deposition testimony of Tyler Donald in its entirety in the event Mr. Donald cannot appear to testify. No additional deposition testimony is being designated at this time because, to the best of Mr. McGee's knowledge, the witnesses listed above with the exception of Mr. Donald are within the Court's jurisdiction and available for trial. To the extent that this changes due to unforeseen developments, Mr. McGee reserves the right to supplement this pre-trial memorandum to designate those portions of deposition testimony that were previously cited as part of Mr. McGee's Response to the SEC's Statement of Undisputed Facts filed in conjunction with his response to the SEC's motion for summary judgment.

**d) Damages or other relief sought:**

Mr. McGee does not seek damages and, instead, seeks judgment in his favor and dismissal of the SEC's claims.

**e) Anticipated Important Legal Issues:**

This case is brought under the misappropriation theory of liability under Section 10(b) of the Securities Exchange Act and Rules 10b-5 and 10b5-2 promulgated thereunder. To prevail against Mr. McGee, the SEC must prove by a preponderance of the evidence that Mr. McGee misappropriated material, nonpublic information from Christopher Maguire, an insider at PHLY, in violation of a fiduciary-like duty of trust and confidence, and that Mr. McGee purchased PHLY stock on the basis of that information. The specific issues identified below that

raise threshold legal questions are more fully set forth in the SEC's motion for summary judgment and responses thereto. The legal issues include:

1. The SEC's evidence is insufficient as a matter of law to show the existence of any fiduciary-like duty or similar relationship of trust and confidence. *United States v. Cassesse*, 273 F. Supp. 2d 481 (S.D.N.Y. 2003) (court dismissed indictment against businessman who traded on information provided to him by business competitor as no duty existed in such relationship).

2. The SEC's evidence is insufficient as a matter of law to show any disclosure within the scope of any purported relationship. *See SEC v. Kim*, 184 F. Supp. 2d 1006 (N.D. Cal. 2002).

3. There was no express confidentiality agreement between Mr. McGee and Mr. Maguire. *See SEC v. Berlacher*, No. 07–3800, 2010 WL 3566790 at *9 (E.D. Pa. Sep. 13, 2010) (requiring meeting of the minds).

4. The SEC's evidence of a purportedly suspicious pattern of calls and trades is insufficient as a matter of law to show the transmission of any material, non-public inside information. *See SEC v. Rorech*, 720 F. Supp. 2d 367, 371 (S.D.N.Y. 2009) (dismissing misappropriation case because it cannot be inferred that tippee must have conveyed prohibited information based on nothing but the existence of closely timed calls and subsequent profitable trades).

5. The SEC fails to offer adequate evidence that Mr. McGee derived any financial benefit from the allegedly illegal trading of anyone Mr. McGee allegedly tipped. *See SEC v. Falbo*, 14 F. Supp. 2d 508, 528 (S.D.N.Y. 1998).

6. Should the SEC prevail on liability, it is not entitled to a joint and several award against Mr. McGee because it cannot adduce sufficient evidence that Messrs. McGee and

Zirinsky engaged in collaborative activity and that Messrs. McGee and Zirinsky had a close relationship that facilitated their perpetration of an alleged fraudulent scheme. *See Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997).

7. The SEC cannot rely on adverse inferences due to its failure to meet the burden of production on critical issues. *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991) (negative inference does not substitute for evidence needed to meet the burden of production)

**e) Anticipated Evidentiary Issues:**

Mr. McGee believes that the Court will be called to rule upon certain other evidentiary issues, including the appropriateness and scope of any claimed adverse inferences. Mr. McGee provides concise summaries of his objections to the anticipated exhibits offered by the SEC in accordance with the Court's September 23, 2014 scheduling order. Mr. McGee reserves the right to supplement these arguments in motions in limine, due to be filed by April 10, 2015 pursuant to the scheduling order. Mr. McGee also reserves the right to object to any exhibits offered by the SEC not provided before April 3, 2015.

**f) Objections to Exhibits**

    (a) <u>Objections to Corporate Policy and Code of Conduct Exhibits.</u>

        *(i) Exhibit 22: PHLY's Insider Trading Policy.*

PHY's Insider Trading Policy is irrelevant under Federal Rule of Evidence 401 because the policy is not a reiteration of federal securities law, but is an internal document outlining a corporate policy regarding insider trading. As a result, even if Mr. McGee violated the PHLY Insider Trading Policy, that evidence would not be probative of whether he violated Section 10(b) or Rule 10b5-2. A violation of the Code would not "be of consequence to determining the action" and therefore is not relevant. Fed. R. Evid. 401.

Even if the Court finds that the Policy is relevant, the document and all testimony relating to it still should be excluded because any possible probative value is substantially outweighed by the potential for unfair prejudice to Mr. McGee. Fed. R. Evid. 403. The Policy clearly is prejudicial and unfairly so. The jury could not help but be confused by evidence of the Policy, which is an amalgam of company policy and PHLY's imprecise, and in some aspects, erroneous overview of the federal securities laws.

*(ii)    Exhibit 65: 2005/2006 Ameriprise Code of Conduct.*

Ameriprise's 2005/2006 Code of Conduct is irrelevant under Federal Rule of Evidence 401 because the policy is not a reiteration of federal securities law, but is an internal document outlining a corporate policy regarding insider trading. As a result, even if Mr. McGee violated the Ameriprise Code of Conduct, that evidence would not be probative of whether he violated Section 10(b) or Rule 10b5-2. A violation of the Code would not "be of consequence to determining the action" and therefore is not relevant. Fed. R. Evid. 401.

Even if the Court finds that the Code is relevant, the document and all testimony relating to it still should be excluded because any possible probative value is substantially outweighed by the potential for unfair prejudice to Mr. McGee. Fed. R. Evid. 403. The Code clearly is prejudicial and unfairly so. The jury could not help but be confused by evidence of the Code, which is an amalgam of company policy and Ameriprise's imprecise, and in some aspects, erroneous overview of the federal securities laws, including vague examples of conduct prohibited by the Code that may or may not be illegal under federal securities laws.

*(iii)    Exhibits 66, 67, 68: 2006 Ameriprise Code of Conduct Training and Confirmation of Training Form.*

Exhibits 66, 67, and 68, which reflect Ameriprise's Code of Conduct Training and

6

confirmation of completed training are irrelevant under Federal Rule of Evidence 401 because these documents do not accurately reiterate federal securities law, but are internal documents outlining a corporate policy regarding insider trading. As a result, even if Mr. McGee violated the Ameriprise Code of Conduct, that evidence would not be probative of whether he violated Section 10(b) or Rule 10b5-2. A violation of the Code would not "be of consequence to determining the action" and therefore is not relevant. Fed. R. Evid. 401.

Even if the Court finds that these documents are relevant, the documents and all testimony relating to them still should be excluded because any possible probative value is substantially outweighed by the potential for unfair prejudice to Mr. McGee. Fed. R. Evid. 403. The documents clearly are prejudicial and unfairly so. The jury could not help but be confused by evidence of the training documents, which reflect an amalgam of company policy and Ameriprise's imprecise, and in some aspects, erroneous overview of the federal securities laws.

*(iv)    Exhibits 69 and 70: Messrs. Zirinsky and McGee's CE Training Activity.*

Exhibits 69 and 70 reflect Messrs. Zirinsky and McGee's Continuing Education training in the Ameriprise Code of Conduct. As explained above, the Ameriprise Code of Conduct is not a reiteration of federal securities law, but is an internal document outlining a corporate policy regarding insider trading. As a result, even if Mr. McGee violated the Ameriprise Code of Conduct, that evidence would not be probative of whether he violated Section 10(b) or Rule 10b5-2. A violation of the Code would not "be of consequence to determining the action" and therefore is not relevant. Fed. R. Evid. 401.

Even if the Court finds that these documents are relevant, the training logs and all testimony relating to them still should be excluded because any possible probative value is

substantially outweighed by the potential for unfair prejudice to Mr. McGee. Fed. R. Evid. 403. The documents clearly are prejudicial and unfairly so. The jury could not help but be confused by evidence of the training documents, which reflect an amalgam of company policy and Ameriprise's imprecise, and in some aspects, erroneous overview of the federal securities laws.

    (v)  *Exhibit 71: Ameriprise Financial Services, Inc. 2006 Compliance Policy Manual.*

    Ameriprise's 2006 Compliance Policy Manual is irrelevant under Federal Rule of Evidence 401 because the policy is not a reiteration of federal securities law, but is an internal document outlining a corporate policy regarding insider trading. As a result, even if Mr. McGee violated the Ameriprise Compliance Policy Manual, that evidence would not be probative of whether he violated Section 10(b) or Rule 10b5-2. A violation of the Policy would not "be of consequence to determining the action" and therefore is not relevant. Fed. R. Evid. 401.

    Even if the Court finds that the Policy is relevant, the document and all testimony relating to it still should be excluded because any possible probative value is substantially outweighed by the potential for unfair prejudice to Mr. McGee. Fed. R. Evid. 403. The Policy clearly is prejudicial and unfairly so. The jury could not help but be confused by evidence of the Policy, which is an amalgam of company policy and Ameriprise's imprecise, and in some aspects, erroneous overview of the federal securities laws.

    (vi)  *Exhibit 72: 2008 Ameriprise Financial Services, Inc. Compliance Manual.*

    Ameriprise's 2008 Compliance Policy Manual is irrelevant under Federal Rule of Evidence 401 because the policy is not a reiteration of federal securities law, but is an internal document outlining a corporate policy regarding insider trading. As a result, even if Mr. McGee

8

violated the Ameriprise Compliance Policy Manual, that evidence would not be probative of whether he violated Section 10(b) or Rule 10b5-2. A violation of the Policy would not "be of consequence to determining the action" and therefore is not relevant. Fed. R. Evid. 401.

Even if the Court finds that the Policy is relevant, the document and all testimony relating to it still should be excluded because any possible probative value is substantially outweighed by the potential for unfair prejudice to Mr. McGee. F.R.E. 403. The Policy clearly is prejudicial and unfairly so. The jury could not help but be confused by evidence of the Policy, which is an amalgam of company policy and Ameriprise's imprecise, and in some aspects, erroneous overview of the federal securities laws.

*(vii)    Exhibit 87: Ameriprise Financial Insider Trading Policy.*

The Ameriprise Financial Insider Trading Policy is irrelevant under Federal Rule of Evidence 401 because the policy is not a reiteration of federal securities law, but is an internal document outlining a corporate policy regarding insider trading. The policy is "not intended to be the law" and indeed is "broader than the law." Trial Transcript 4:20-5:21, *United States v. McGee,* (E.D. Pa. Nov. 13, 2012). As a result, even if Mr. McGee violated the Ameriprise Policy, that evidence would not be probative of whether he violated Section 10(b) or Rule 10b5-2. A violation of the Policy would not "be of consequence to determining the action" and therefore is not relevant. Fed. R. Evid. 401.

Even if the Court finds that the Policy is relevant, the document and all testimony relating to it still should be excluded because any possible probative value is substantially outweighed by the potential for unfair prejudice to Mr. McGee. F.R.E. 403. The Policy clearly is prejudicial and unfairly so. The jury could not help but be confused by evidence of the Policy, which is an amalgam of company policy and Ameriprise's imprecise, and in some aspects,

9

erroneous overview of the federal securities laws.

    (b)  <u>Objections to Correspondence Exhibits.</u>

      (i)  *Exhibit 41: SEC SUB-PHLY-0195182.*

Exhibit 41 is a September 2, 2008 e-mail from Mr. McGee to Jeremy M. Straub with carbon copies to, among others, Ari Frazer, and Mr. Zirinsky. This correspondence discusses an upcoming ski trip and is irrelevant under Federal Rule of Evidence 401 because it has no bearing on any "fact [that] is of consequence in determining the action." Fed. R. Evid. 401(b). To prove its claim against Mr. McGee, the SEC must establish that Mr. McGee deceived Chris Maguire, in violation of a fiduciary-like relationship, to obtain material, non-public information and traded on that information. To prove its claim against Mr. Zirinsky, the SEC must show that Mr. McGee passed the material, non-public information to Mr. Zirinsky, that Mr. Zirinsky knew or should have known that the information provided by Mr. McGee was obtained in violation of a fiduciary-like relationship, and that Mr. Zirinsky intentionally or recklessly traded on the information. Exhibit 41 has no bearing on any of these elements and shows only that a group of individuals, including Messrs. McGee and Zirinsky, planned a ski trip approximately two months after the alleged trades. Accordingly, Exhibit 41 is inadmissible.

      (ii)  *Exhibit 42: SEC SUB-PHLY-0143603.*

Exhibit 42 is a June 9, 2008 e-mail from Mr. McGee to Chris Benec with carbon copies to Ari Frazer and Mr. Zirinsky. This correspondence discusses dinner plans and is irrelevant under Federal Rule of Evidence 401 because it has no bearing on any "fact [that] is of consequence in determining the action." Fed. R. Evid. 401(b). To prove its claim against Mr. McGee, the SEC must establish that Mr. McGee deceived Chris Maguire, in violation of a fiduciary-like relationship, to obtain material, non-public information and traded on that

information.  To prove its claim against Mr. Zirinsky, the SEC must show that Mr. McGee passed the material, non-public information to Mr. Zirinsky, that Mr. Zirinsky knew or should have known that the information provided by Mr. McGee was obtained in violation of a fiduciary-like relationship, and that Mr. Zirinsky intentionally or recklessly traded on the information.  Exhibit 42 has no bearing on any of these elements and shows only that Messrs. McGee and Zirinsky planned to have dinner approximately one month before the SEC alleges any inside information was transferred by Chris Maguire.   Accordingly, Exhibit 42 is inadmissible.

        *(iii)      Exhibits 43 and 47:  SEC SUB-PHLY-0195861 and SEC SUB-PHLY-0119630.*

Exhibits 43 and 47 are July 30, 2008 and July 29, 2008 e-mails, respectively, between Mr. McGee, Patrick Wayman, Ari Frazer, and Mr. Zirisnky discussing plans to combine businesses.  This correspondence is irrelevant under Federal Rule of Evidence 401 because it has no bearing on any "fact [that] is of consequence in determining the action."  Fed. R. Evid. 401(b).  To prove its claim against Mr. McGee, the SEC must establish that Mr. McGee deceived Chris Maguire, in violation of a fiduciary-like relationship, to obtain material, non-public information and traded on that information.  To prove its claim against Mr. Zirinsky, the SEC must show that Mr. McGee passed the material, non-public information to Mr. Zirinsky, that Mr. Zirinsky knew or should have known that the information provided by Mr. McGee was obtained in violation of a fiduciary-like relationship, and that Mr. Zirinsky intentionally or recklessly traded on the information.  Exhibits 43 and 47 have no bearing on any of these elements and both show only that Messrs. McGee, Wayman, Frazer, and Zirinsky discussed combining their businesses after the SEC alleges the insider trading occurred.  Moreover, the four individuals did

not combine their businesses until January 2009, approximately sixth months after the alleged trading.

Moreover, Exhibits 43 and 47 both contain Patrick Wayman's July 29, 2008 e-mail which is inadmissible hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c)(1)-(2). The SEC relies upon Exhibits 43 and 47 in support of its claim that Messrs. McGee, Wayman, Frazer, and Zirisnky discussed combining their businesses. Accordingly, Patrick Wayman's out-of-court statement in his July 29, 2008 e-mail is hearsay and is inadmissible.

*(iv) Exhibit 44: SEC SUB-PHLY-0194062.*

Exhibit 44 is a September 4, 2008 e-mail from Mr. McGee to Messrs. Zirisnky, Frazer, and Wayman regarding Mr. McGee's solicitation of business from PHLY. This correspondence is irrelevant under Federal Rule of Evidence 401 because it has no bearing on any "fact [that] is of consequence in determining the action." Fed. R. Evid. 401(b). To prove its claim against Mr. McGee, the SEC must establish that Mr. McGee deceived Chris Maguire, in violation of a fiduciary-like relationship, to obtain material, non-public information and traded on that information. To prove its claim against Mr. Zirinsky, the SEC must show that Mr. McGee passed the material, non-public information to Mr. Zirinsky, that Mr. Zirinsky knew or should have known that the information provided by Mr. McGee was obtained in violation of a fiduciary-like relationship, and that Mr. Zirinsky intentionally or recklessly traded on the information. Exhibit 44 has no bearing on any of these elements and shows only that Messrs. McGee, Wayman, Frazer, and Zirinsky discussed soliciting business from PHLY after the SEC alleges the insider trading occurred. Moreover, as explained above, the four individuals did not combine their business until January 2009, approximately sixth months after the alleged trading.

12

Accordingly, Exhibit 44 is inadmissible.

      *(v)  Exhibit 224: Chart of Telephone Calls and Texts Between C. Maguire and T. McGee.*

  Exhibit 224 is a summary chart of "Telephone Calls and Texts Between Maguire and McGee" and is irrelevant under Federal Rule of Evidence 401 because it has no bearing on any "fact [that] is of consequence in determining the action." Fed. R. Evid. 401(b). To prove its claim against Mr. McGee, the SEC must establish that Mr. McGee deceived Chris Maguire, in violation of a fiduciary-like relationship, to obtain material, non-public information and traded on that information. The SEC alleges that Chris Maguire passed material, non-public information to Mr. McGee during a private, in-person conversation outside of an Alcoholics Anonymous meeting. Accordingly, any evidence of telephone calls and texts between the two is irrelevant to prove the elements of the SEC's claim. Similarly, the SEC's claim that the inside information was transmitted in person means the possible probative value of this document is substantially outweighed by the potential for unfair prejudice to Mr. McGee. Fed. R. Evid. 403. Jurors could easily be confused that any repeated correspondence between Messrs. Maguire and McGee suggests that inside information was passed between them when their limited conversations typically centered around sobriety and exercise. Accordingly, Exhibit 244 is inadmissible.

    (c)  <u>Mr. Zirinsky's Pretrial Evidentiary Objections.</u>

  Mr. McGee incorporates the evidentiary objections in Mr. Zirinsky's Pretrial Memorandum as if fully set forth herein. Mr. McGee also notes that he has joined in (1) the Motion In Limine To Exclude The Disgorgement Agreement And Trading Of Paulo Lam And Any Other Purported Downstream "Hong Kong" Trading And Communications, and

Memorandum of Law in support thereof, filed by Defendant Michael W. Zirinsky and (2) the Motion In Limine To Exclude Opinion, Expert, and Inappropriate Testimony Of Plaintiff Summary Witness Daniel L. Koster, and Memorandum of Law in support thereof, filed by Defendant Michael W. Zirinsky.

Respectfully submitted,

Dated: April 3, 2015
/s/ John C. Grugan
John C. Grugan (Attorney No. 83148)
Paul J. Koob (Attorney No. 309029)
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

Attorneys for Defendant Timothy J. McGee

## **CERTIFICATE OF SERVICE**

I, Paul J. Koob, hereby certify that on this 3rd day of April, a true and correct copy of the foregoing Pretrial Memorandum was served on all counsel of record via electronic service.

   /s/ Paul J. Koob